IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | FILED |
| Plaintiff, | ) | APR 2 1 2011 |
| | ) NO. | |
| vs. | ) | U. S. DISTRICT COURT |
| | ) | E. DIST. OF MO. |
| | ) | ST. LOUIS |
| DOUGLAS MORGAN, | ) | |
| Defendant. | ) | 4:11CR00155CDP |

## INDICTMENT

**THE GRAND JURY CHARGES:**

## COUNT 1

## BANK FRAUD

A. INTRODUCTION

At all times relevant to the Indictment:

1. Commercial Bank was a financial institution with its deposits insured by the Federal Deposit Insurance Corporation, with locations in West Port Plaza, Florissant, and Chesterfield, Missouri.

2. The defendant, **DOUGLAS MORGAN**, was the Chairman of the St. Louis County Planning Commission, and a shareholder and member of the Advisory Board for Commercial Bank. **DOUGLAS MORGAN's** wife is Adrienne Morgan. Dean Morgan is one of defendant **DOUGLAS MORGAN's** children. Kimberly Morgan Thorwegen is another of defendant **DOUGLAS MORGAN's** children and her husband is Blue Thorwegen.

1

3.     Dan Morgan was defendant **DOUGLAS MORGAN's** father. Dan Morgan died on October 14, 2000. At the time of his death, the Dan Morgan Revocable Trust was valued at approximately $4,000,000, after state and federal taxes. Following Dan Morgan's death, and pursuant to the terms of the Dan Morgan Revocable Trust, the defendant **DOUGLAS MORGAN** received approximately $1,100,000 in the Douglas Morgan Exempt Life Trust (hereinafter referred to as "Trust 1"), and approximately $530,000 in the Douglas Morgan Non-Exempt Life Trust (hereinafter referred to as "Trust 2"). The defendant **DOUGLAS MORGAN** received these funds in Trust 1 and Trust 2 during 2001 and 2002. Also, pursuant to the Dan Morgan Revocable Trust, Dan Morgan's second wife and widow, Hortense Morgan, received a substantial trust, the Hortense Morgan Marital Trust. Further, Dan Morgan's first wife, and defendant **DOUGLAS MORGAN's** mother, Laverne Morgan received a trust valued at approximately $750,000. Upon Laverne Morgan's death during 2003, the defendant **DOUGLAS MORGAN** received the balance of her trust, approximately $725,000, which funds were made a part of **DOUGLAS MORGAN's** Trust 2.

4.     D & K Investments, LLP, (hereinafter referred to as "D & K") was a partnership established by defendant **DOUGLAS MORGAN** and one of his close personal friends. D & K never owned, held, or otherwise controlled funds or investments in excess of $1,000.

B.     SCHEME TO DEFRAUD

5.     Beginning on or about November 1, 1999, and continuing through March 31, 2011, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendant,

**DOUGLAS MORGAN,**

2

devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money, funds, assets, and other property owned by, or under the custody or control of, Commercial Bank, by means of materially false and fraudulent pretenses, representations, and promises.

6.  It was a part of the scheme that defendant **DOUGLAS MORGAN** obtained, renewed, and refinanced a series of loans, while also guaranteeing several loans in his son Dean's name and in his daughter and son-in-law Kimberly and Blue Thorwegen's names, through Commercial Bank based upon a number of false and deceptive Personal Financial Statements submitted by defendant to the bank.

7.  It was a part of the scheme that on or about November 1, 1999, defendant **DOUGLAS MORGAN**, along with his wife Adrienne Morgan, obtained a loan from Commercial Bank, loan number 3411681, in the approximate amount of $324,514.14. This loan was renewed by defendant **DOUGLAS MORGAN** and his wife Adrienne Morgan several times before it was refinanced on or about February 8, 2006 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 3120191. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in renewing and refinancing this loan.

8.  It was a further part of the scheme that, on or about October 10, 2000, defendant **DOUGLAS MORGAN** submitted a false and deceptive Personal Financial Statement to Commercial Bank. The Personal Financial Statement included several false and deceptive representations including, but not limited to: 1) defendant **DOUGLAS MORGAN** owned U.S. Government & Marketable Securities "In Trust" at the law firm "Thompson & Coburn" in defendant's name "only" valued at $4,200,000 and; 2) D & K held total assets of $1,100,000 and defendant **DOUGLAS MORGAN's** 50% ownership share of that partnership investment was valued

3

at $550,000. As defendant **DOUGLAS MORGAN** knew, Dan Morgan had not yet died, Trust 1 and Trust 2 had not yet been established and funded, and Thompson & Coburn held no trust in defendant's name "only" valued at $4,200,000. Further, defendant knew that D & K never held assets or funds in excess of $1,000.

9. It was a further part of the scheme that, on or about July 11, 2001, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 2141141, in the approximate amount of $450,000. This loan was renewed by defendant **DOUGLAS MORGAN** several times until it was refinanced on or about April 28, 2005 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4159871. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing this loan.

10. It was a further part of the scheme that, on or about April 16, 2002, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4149631, in the approximate amount of $110,000. On June 6, 2002, defendant increased this loan to $150,000. This loan was renewed by defendant **DOUGLAS MORGAN** several times until it was refinanced on or about April 28, 2005 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4159871. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing this loan.

11. As a further part of the scheme, on or about October 15, 2002, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4150401, in the approximate amount of $53,000. This loan was renewed by defendant **DOUGLAS MORGAN** several times until it was refinanced on or about April 28, 2005 through defendant **DOUGLAS MORGAN's**

4

Commercial Bank loan number 4159871. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing this loan.

12. As a further part of the scheme, on or about February 6, 2003, defendant **DOUGLAS MORGAN** submitted a false and deceptive Personal Financial Statement to Commercial Bank. The Personal Financial Statement included several false and deceptive representations including, but not limited to: 1) defendant **DOUGLAS MORGAN** owned U.S. Government & Marketable Securities "In Trust" at the law offices of "Thompson Coburn" in the name "Dan Morgan Life Trust for Douglas Morgan" valued at $5,500,000 and; 2) D & K held total assets of $1,300,000 and defendant **DOUGLAS MORGAN's** 50% ownership share of the partnership investment was valued at $650,000. As defendant **DOUGLAS MORGAN** knew, Thompson Coburn held no trust for his benefit, and the total combined value of Trust 1 and Trust 2 as of February 6, 2003 was approximately $1,002,657.40. Further, defendant knew that D & K never held assets or funds in excess of $1,000.

13. As a further part of the scheme, on or about April 3, 2003, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4151391, in the approximate amount of $30,000. This loan was renewed by defendant **DOUGLAS MORGAN** several times until it was refinanced on or about April 28, 2005 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4159871. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing this loan.

14.     As a further part of the scheme, on or about June 3, 2004, defendant **DOUGLAS MORGAN**, along with Adrienne Morgan, submitted a false and deceptive Personal Financial Statement to Commercial Bank. The Personal Financial Statement included several false and deceptive representations including, but not limited to: 1) defendant **DOUGLAS MORGAN** held cash, checking and savings accounts, certificates of deposit, money market funds, etc. at Royal Alliance in the amount of $200,000; 2) defendant **DOUGLAS MORGAN** held U.S. Government & Marketable Securities in Trust 1 valued at $6,325,000 and in Trust 2 valued at $7,200,000 and; 3) D & K held an interest in a "business venture" in the name of the Hortense Morgan Trust valued at $900,000 and defendant **DOUGLAS MORGAN's** 50% ownership share of that "business venture" was valued at $450,000. As defendant **DOUGLAS MORGAN** knew, the total funds held by him at Royal Alliance as of June 3, 2004 was $10,165.60. Further, as defendant **DOUGLAS MORGAN** knew, the total combined value of Trust 1 and Trust 2 as of June 3, 2004 was approximately $703,410.56. Further, defendant knew that D & K never held a "business venture" under the name of the Hortense Morgan Trust, defendant had no present interest in the Hortense Morgan Trust, and D & K never held assets or funds in excess of $1,000.

15.     As a further part of the scheme, on or about December 23, 2004, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 41591412, in the approximate amount of $25,000. This loan was refinanced on or about April 28, 2005 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4159871. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing and refinancing this loan.

6

16.     As a further part of the scheme, on or about February 14, 2005, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4159451, in the approximate amount of $80,000. This loan was refinanced on or about April 28, 2005 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4159871. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing and refinancing this loan.

17.     As a further part of the scheme, on or about April 28, 2005, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4159871, in the approximate amount of $538,000. This loan was partially refinanced in the amount of $364,986.59 on or about February 3, 2006 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 3120191. The remaining balance of this loan was then refinanced on or about February 8, 2006 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 2148291. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing this loan.

18.     As a further part of the scheme, on or about September 7, 2005, Dean Morgan obtained a loan from Commercial Bank, loan number 3119953, in the approximate amount of $612,876.00. Defendant **DOUGLAS MORGAN** personally guaranteed this loan. The balance of this loan, approximately $524,684.13, is still outstanding. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** as the guarantor of this loan in issuing and renewing this loan.

19.     As a further part of the scheme, on or about February 3, 2006, defendant **DOUGLAS MORGAN**, along with Adrienne Morgan, submitted a false and deceptive Personal Financial

7

Statement to Commercial Bank. The Personal Financial Statement included several false and deceptive representations including, but not limited to: 1) defendant **DOUGLAS MORGAN** held cash, checking and savings accounts, certificates of deposit, money market funds, etc. at Royal Alliance in the amount of $200,000; 2) defendant **DOUGLAS MORGAN** held U.S. Government & Marketable Securities in Trust 1 valued at $6,325,000 and in Trust 2 valued at $7,200,000; 3) D & K held an interest in a "business venture" under the name of the Hortense Morgan Trust valued at $900,000 and defendant **DOUGLAS MORGAN's** 50% ownership share of that "business venture" was valued at $450,000, and: 4) defendant **DOUGLAS MORGAN** owned homes located at 9130 Bayberry, Fort Myers, Florida, and 1985 Ocean Boulevard, Hallandale, Florida, with a combined market value of $1,055,000, and no outstanding loans on the residences. As defendant **DOUGLAS MORGAN** knew, as of February 3, 2006, he held no funds at Royal Alliance. Further, as defendant **DOUGLAS MORGAN** knew, the total combined value of Trust 1 and Trust 2 as of February 3, 2006 was approximately $383,560.54. Further, defendant knew that the Hortense Morgan Trust was not a "business venture" held by D & K, defendant had no present interest in the Hortense Morgan Trust, and that D & K never held assets or funds in excess of $1,000. Additionally, defendant knew that the residence at 9130 Bayberry had been previously sold on or about July 12, 2004 for approximately $240,000, and the residence at 1985 Ocean Boulevard had been previously sold on or about June 3, 2005 for approximately $312,000.

20. As a further part of the scheme, on or about February 3, 2006, defendant **DOUGLAS MORGAN,** along with Adrienne Morgan, obtained a loan from Commercial Bank, loan number 3120191, in the approximate amount of $575,000. This loan was renewed by defendant **DOUGLAS MORGAN**, but the balance, approximately $498,363.94, has never been paid off. Commercial

8

Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing and renewing this loan. Further, this loan was secured by a first deed of trust on defendant **DOUGLAS MORGAN's** primary residence at 312 Woods Mill Terrace Lane. As a further part of the scheme, defendant **DOUGLAS MORGAN** failed to pay property taxes on this residence to St. Louis County, Missouri for the years 2008, 2009, and 2010, totaling in excess of $20,000, subjecting this property to potential foreclosure by St. Louis County, Missouri.

21. As a further part of the scheme, on or about February 8, 2006, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 2148291, in the approximate amount of $364,986.59. This loan was renewed by defendant **DOUGLAS MORGAN**, but the balance, approximately $232,466.09, has never been paid off. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing and renewing this loan.

22. As a further part of the scheme, on or about July 18, 2007, defendant **DOUGLAS MORGAN**, along with Adrienne Morgan, submitted a false and deceptive Personal Financial Statement to Commercial Bank. The Personal Financial Statement included several false and deceptive representations including, but not limited to: 1) defendant **DOUGLAS MORGAN** held cash, checking and savings accounts, certificates of deposit, money market funds, etc. at Royal Alliance in the amount of $200,000; 2) defendant **DOUGLAS MORGAN** held U.S. Government & Marketable Securities in Trust 1 valued at $6,325,000 and in Trust 2 valued at $7,200,000 and; 3) defendant **DOUGLAS MORGAN** held a "business venture" under the name the Hortense Morgan Trust valued at $1,200,000 and defendant **DOUGLAS MORGAN's** 100% ownership share of that "business venture" was valued at $1,200,000. As defendant **DOUGLAS MORGAN** knew,

as of July 18, 2007, he held no funds at Royal Alliance. Further, as defendant **DOUGLAS MORGAN** knew, the total combined value of Trust 1 and Trust 2 as of July 18, 2007 was approximately $440,274.32. Further, defendant knew that the Hortense Morgan Trust was not a "business venture" in which he held a present interest, and that he held no present interest in the actual Hortense Morgan Trust.

23. As a further part of the scheme, on or about January 4, 2008, Kimberly and Blue Thorwegen obtained a loan from Commercial Bank, loan number 2150963, in the approximate amount of $200,000.00. Defendant **DOUGLAS MORGAN** personally guaranteed this loan. The balance of this loan, approximately $248,271.71, is still outstanding. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** as the guarantor of this loan in issuing and renewing this loan.

24. As a further part of the scheme, on or about October 22, 2008, defendant **DOUGLAS MORGAN**, along with Adrienne Morgan, submitted a false and deceptive Personal Financial Statement to Commercial Bank. The Personal Financial Statement included several false and deceptive representations including, but not limited to: 1) defendant **DOUGLAS MORGAN** held cash, checking and savings accounts, certificates of deposit, money market funds, etc. at Royal Alliance in the amount of $260,000; 2) defendant **DOUGLAS MORGAN** held U.S. Government & Marketable Securities in Trust 1 valued at $5,870,000 and in Trust 2 valued at $6,900,000 and; 3) defendant **DOUGLAS MORGAN** held a "business venture" under the name the Hortense Morgan Trust valued at $1,250,000 and defendant **DOUGLAS MORGAN's** 100% share of that "business venture" was valued at $1,250,000. As defendant **DOUGLAS MORGAN** knew, as of October 22, 2008, he held no funds at Royal Alliance. Further, as defendant **DOUGLAS**

10

MORGAN knew, the total combined value of Trust 1 and Trust 2 as of October 22, 2008 was approximately $100,517.63. Further, defendant knew that the Hortense Morgan Trust was not a "business venture" in which he held a present interest, and that he held no present interest in the actual Hortense Morgan Trust.

25. As a further part of the scheme, on or about February 4, 2009, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4900721, in the approximate amount of $50,000. Defendant **DOUGLAS MORGAN** renewed this loan at least one time. This loan was refinanced on or about January 4, 2010 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4167411. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing this loan.

26. As a further part of the scheme, on or about January 4, 2010, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4167411, in the approximate amount of $50,000. Defendant **DOUGLAS MORGAN** renewed this loan at least one time. The balance of this loan, approximately $36,055.42, has never been paid off. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing and renewing this loan.

27. As a further part of the scheme, on or about May 26, 2010, defendant **DOUGLAS MORGAN** obtained a loan from Commercial Bank, loan number 4167793, in the approximate amount of $25,000. This loan was refinanced on or about July 16, 2010 through defendant **DOUGLAS MORGAN's** Commercial Bank loan number 4167903. Commercial Bank relied upon

one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN** in issuing and refinancing this loan.

28.  As a further part of the scheme, on one and more occasions, defendant **DOUGLAS MORGAN** falsely represented to an officer of Commercial Bank that the funds and securities purportedly contained within Trust 1 and Trust 2, with an alleged combined value of approximately $13,000,000, had been seized or were being held by the United States Internal Revenue Service ("IRS"), but that they would be released to defendant in the near future. As defendant **DOUGLAS MORGAN** knew, the IRS never had a hold or seizure on his purported trust funds. Commercial Bank relied upon these false representations of defendant **DOUGLAS MORGAN** in issuing, renewing, and refinancing one or more of the above-referenced loans, as well as future loans.

29.  As a further part of the scheme, on or about July 14, 2010, defendant **DOUGLAS MORGAN** forwarded to Commercial Bank a letter from his representative, attorney Thomas A. Connelly, which falsely suggested, implied and represented that defendant **DOUGLAS MORGAN's** trust funds, "amounting to $12-14,000,000.00", would be released by the IRS, and that defendant had "received oral assurances that the money would be released...." As defendant **DOUGLAS MORGAN** knew, at that time there were no funds whatsoever remaining in either Trust 1 or Trust 2, and the IRS had no hold or seizure on his purported trust funds. Commercial Bank relied upon these false representations in issuing, renewing, and refinancing one or more of the above-referenced loans, as well as future loans.

30.  As a further part of the scheme, on or about July 16, 2010, defendant **DOUGLAS MORGAN,** along with Adrienne Morgan, obtained a loan from Commercial Bank, loan number 4167903, in the approximate amount of $95,000. The balance of this loan, approximately $95,000,

has never been paid off. Commercial Bank relied upon one or more false Personal Financial Statements submitted by defendant **DOUGLAS MORGAN,** along with the July 14, 2010 Thomas A. Connelly letter, in issuing and renewing this loan.

    31.    As a further part of the scheme, on numerous occasions during the final months of 2010 and through March, 2011, defendant **DOUGLAS MORGAN** and his representative continued to falsely state to officers and representatives of Commercial Bank that the funds and assets held in defendant **DOUGLAS MORGAN's** trusts were being held up and were seized by the IRS when, in fact, as defendant **DOUGLAS MORGAN** well knew, the IRS had no such hold or seizure on his purported trust funds, and there were no funds whatsoever remaining in Trust 1 or Trust 2.

All in violation of Title 18, United States Code, Section 1344.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney


_____
HAL GOLDSMITH, 62501
Assistant United States Attorney